UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SHAYARTO PERKINS,

              Plaintiff,                  Case No. 2:11-cv-23

v.                                 Honorable R. Allan Edgar

CHARLIE MCCARTHY, et al.,

              Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Shayarto Perkins filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Assistant Food Supervisor Charlie McCarthy, Corrections Officer J. Tervo, Corrections Officer D. Pelkola, Assistant Deputy Warden Unknown Edlund, Assistant Deputy Warden James Alexander, Deputy Warden Robert Napel, Warden Gerald Hofbauer, Doctor Bienvenido Canlas, Corrections Officer Unknown Sohlden, Corrections Officer K. Isaacson, Food Supervisor Herbert Barry, Assistant Food Supervisor Joseph Neher, Food Steward Unknown Maki, Food Steward Unknown Hodges, Chaplain Keith Snyder, Acting Inspector Unknown Petaja, Assistant Resident Unit Supervisor T. Pertu, Assistant Deputy Warden William Jondreau, Deputy Warden Jeffrey Larson, Grievance Coordinator S. Raymond, Northern Regional Prison Administrator Jeri-Ann Sherry and Lieutenant Unknown Yankovich.

Plaintiff alleges that on September 15, 2009, he told Defendant McCarthy that the way he was treating him constituted racial discrimination and retaliation. Defendant McCarthy tried to

cover his actions by claiming that Plaintiff was a bad worker, despite the fact that Plaintiff's work performance evaluation showed that he was an above average worker. On October 5, 2009, Defendant Tervo ordered Plaintiff to clean a bathroom which had been contaminated with blood, feces and urine, but refused to give Plaintiff gloves or other protective gear, stating that Plaintiff's "black ass" did not have anything coming. On October 9, 2009, Defendant Tervo struck Plaintiff on his testicles while conducting a pat down search, telling Plaintiff that was in retaliation for Plaintiff's grievances and litigation against Defendant McCarthy. Defendant Tervo also told Plaintiff that none of the deputies or Warden liked complainers and that Defendants McCarthy, Edlund, Alexander, Napel and Hofbauer had instructed Defendants Tervo and Pelkola to write misconduct reports on Plaintiff whenever they could. Plaintiff requested medical care for the injury to his testicles, but his request was denied by Defendants Tervo, McCarthy, Edlund, Alexander, Napel and Hofbauer. On October 10, 2009, Plaintiff received misconduct reports from Defendants Tervo and Pelkola.

On December 11, 2009, Plaintiff was threatened with a retaliatory transfer to the Baraga Maximum Correctional Facility (AMF). Plaintiff was told that Defendants have many friends working at AMF. On December 28, 2009, Plaintiff was transferred to AMF. On March 31, 2010, Defendant Canlas refused to provide medical care regarding Plaintiff's abnormal blood test, which Defendant Canlas admitted was indicative of an internal organ problem. Defendant Canlas told Plaintiff that if staff told him to deny or delay medical treatment because of Plaintiff's use of the grievance system, Defendant Canlas would oblige them. In addition, Defendant Canlas stated that if Plaintiff had wanted his medical problem to be properly addressed, he should have thought of that before he filed complaints on staff.

On April 21, 2010, Plaintiff's typewriter, which had been in the possession of staff, was returned to him. Plaintiff inspected the typewriter and discovered that the paper bail rod had been

removed. Plaintiff asserts that this removal was retaliatory. On April 29, 2010, Plaintiff received a grievance appeal form which was missing one of the pages, so as to prevent Plaintiff from filing an appeal. Defendant Raymond told Plaintiff that he could expect many of his grievances to be rejected or denied, or otherwise interfered with in retaliation for Plaintiff's complaints against staff. Defendant Raymond also told Plaintiff that if he continued to file complaints, he would be placed on modified access to the grievance procedure.

On May 1, 2010, Defendant Isaacson searched Plaintiff at the behest of Defendant Sohlden after Plaintiff refused to discuss his complaints with Defendant Sohlden, stating that he and Officer Majurin were going to use such searches to provoke Plaintiff until he agreed to drop his complaints. During the search, Defendant Isaacson ran his hands over the top part of Plaintiff's buttocks. Plaintiff also alleges that Defendants Sohlden, Isaacson, Raymond, Pertu, Neher, Barry and Petaja try to catch prisoners masturbating in their cells in order to gratify their homosexual desires because black males have bigger penises. On June 9, 2010, the court approved a settlement in a prior case filed by Plaintiff, which provided that Plaintiff begin receiving Kosher meals. On July 14, 2010, Defendant Barry told Plaintiff that he was going to be receiving false misconduct reports from staff.

Plaintiff alleges that on July 22, 2010, Defendant Maki "continued a pattern of subjecting Plaintiff to racial harassment, racial slurs and retaliatory mistreatment." Plaintiff complained to Defendant Neher, who indicated that he agreed with Defendant Maki's opinion of non-whites and that Plaintiff especially deserved to be mistreated because of his complaints against Defendants. On July 26, 2010, Defendant Barry wrote a false, retaliatory Notice of Intent on Plaintiff, stating that he had been observed drinking Kosher soy milk in a non-Kosher area, and should not continue to receive a Kosher diet. Defendant Barry waited nearly one month before reviewing the Notice of Intent with Plaintiff. On August 24, 2010, Plaintiff received an administrative hearing by

Defendant Snyder, which affirmed the Notice of Intent and ruled that Plaintiff was not eligible to receive a Kosher diet. Plaintiff claims that Defendants Barry and Snyder falsified the Kosher diet violations in order to circumvent the settlement agreement regarding Plaintiff's Kosher diet.

On September 17, 2010, Defendant Hodges served Plaintiff breakfast and lunch that were supposed to be Kosher, but Defendant Hodges put his bare dirty hands into Plaintiff's food and moved it around while Plaintiff was watching. When Plaintiff protested, Defendant Hodges put on some dirty gloves and repeated the action. Defendant Hodges told Plaintiff that he was going to pay for filing complaints and that even if Plaintiff filed a complaint on him, he knew that Defendants Barry and Neher would cover for him.

On November 4, 2010, an unnamed person warned Plaintiff to stop filing complaints. On December 17, 2010, Plaintiff was placed on modified access to the grievance procedure. On December 22, 2010, Defendant Pertu boasted that Plaintiff's previous misconduct convictions were part of a concerted effort by staff and Defendant Sherry to teach Plaintiff to stop filing complaints. Plaintiff states that on some unspecified date, Defendant Yankovich conducted a major misconduct hearing on a report written by Defendant Raymond. During the hearing, Plaintiff protested that the misconduct was retaliatory and that his witnesses had not been contacted. Plaintiff also states that the report violated policy because Defendant Sherry authorized the report, rather than the Deputy Director. Defendant Yankovich told Plaintiff that he did not want to hear Plaintiff's excuses, that he had been told to find Plaintiff guilty and that was what he was going to do. On December 23, 2010, Plaintiff requested a grievance form so that he could file a grievance regarding Defendant Yankovich's conduct. Defendant Raymonds refused to give Plaintiff the form.

Plaintiff's complaint alleges that Defendants violated his rights under the First, Eighth and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as

injucitve relief. Presently before the Court are the Defendants' Motions for Summary Judgment, pursuant to Fed. R. Civ. P. 56 (docket #79 and #95). Plaintiff has responded to the motions and the matter is ready for decision.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

As noted above, Plaintiff alleges that Defendant Isaacson ran his hands over Plaintiff's buttocks during a search at the behest of Defendant Sohlden in violation of the Eighth Amendment.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

"[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted). "To prevail on a constitutional claim of sexual harassment, an inmate must therefore prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." *Freitas*, 109 F.3d at 1338 (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

Circuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the unnecessary and wanton infliction of pain. *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir.

2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th Cir. March 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary and wanton infliction of pain); *cf. Seltzer-Bey v. Delo*, 66 F.3d 961, 962-63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment); *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (magistrate judge correctly held that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim). Other courts have held that even minor, isolated incidents of sexual touching coupled with occasional offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g., Jackson v. Madery,* 158 F. App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared

sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris,* 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v. Schneider*, 105 F.3d 857, 859-61 (2d Cir. 1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

In this case, Plaintiff's claim that Defendant Isaacson touched the top of his buttocks during a search clearly falls short of an Eighth Amendment violation. Therefore, Defendants Isaacson and Sohlden are entitled to summary judgment on this claim.

Plaintiff also claims that Defendant Isaacson told him that he and Officer Majurin were going to use such searches to provoke Plaintiff until he agreed to drop his complaints in violation of Plaintiff's First Amendment right to be free from retaliation. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308

F.3d 594, 606 (6th Cir. 2002). The undersigned concludes that a pat down search in which the top of the buttocks are touched is not sufficiently adverse to deter a person of ordinary firmness from engaging in protected conduct.

Plaintiff alleges that Defendant Tervo struck his testicles during a body search and denied him medical care. Defendants assert that there is no record that Plaintiff ever sought medical care for the alleged blow to his testicles during the pertinent time period and that there is no record of a critical incident report. Finally, Defendant Tervo denies ever striking Plaintiff in this manner. (Defendants' Exhibit D, ¶ 4, docket #80-5.)

In response to this assertion, Plaintiff offers his affidavit, in which he attests that he was struck by Defendant Tervo and denied medical care (docket #87-1). Plaintiff also offers a copy of note by Richard Miles, M.D., indicating that he saw Plaintiff on October 30, 2009. In the subjective section of the note, Dr. Miles states: "Patient is complaining of testicular pain. Patient states hit in testicles by a hand on 10-9-09." In the objective section, Dr. Miles notes that Plaintiff had +1 tenderness bilaterally in his testicles. (Plaintiff's Exhibit D, docket #87-1.) In the opinion of the undersigned, Plaintiff has demonstrated the existence of a genuine issue of material fact regarding whether Defendant Tervo struck him in the testicles in violation of Plaintiff's Eighth Amendment rights.

Plaintiff claims that after Defendant Tervo struck him in the testicles, he requested medical care and his request was denied by Defendants Tervo, McCarthy, Edlund, Alexander, Napel and Hofbauer in retaliation for Plaintiff's conduct in filing complaints against Defendants. Defendants state that they are entitled to summary judgment on this claim. In response to Defendants' assertion, Plaintiff offers the affidavit of inmate Solomon-Bey, who attests:

> While Perkins was laying on the floor, he told Tervo he needed medical attention, but Tervo ignored Perkins and went into the kitchen office. He then came out a couple minutes or so later, while Perkins was still on the floor. Tervo stood over Perkins and told him either me, McCarthy, Edlund, Alexander, Napel or Hofbauer, don't want Perkins to have a damn thing, Tervo then told Perkins, quote, "you don't have anything coming as far as medical attention."

(Plaintiff's Exhibit E, ¶ 3, docket #87-1.)

Defendants assert the fact that prisoner Solomon's affidavit is unsigned prevents the court from considering the affidavit to determine whether there is an issue of fact. However, a prisoner may show the existence of a genuine issue of material fact he submits statements which were subscribed to as true under penalty of perjury. *McCourt v. Rios*, 2010 WL 3269905, 11 (D. Minn. 2010) (*citing Hill v. Kansas City Metro Task Force,* 182 Fed.Appx. 620, 621–622 (8th Cir.2006)(holding that prisoner raised genuine issue of material fact where his statements were subscribed to as true under penalty of perjury), citing *Title 28 U .S.C. § 1746* (providing that where a matter must be supported or evidenced by a sworn declaration, statement or affidavit, "such matter may, with like force and effect, be supported, evidence, established, or proved by the unsworn declaration . . . or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated [.]"); *Roberson v. Hayti Police Dep't,* 241 F.3d 992, 994–95 (8th Cir.2001)("Although a party may not generally rest on his pleadings to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint need not be repeated in a responsive affidavit in order to survive a summary judgment motion."). Because inmate Solomon's statement complies with this requirement, Defendants' contention that it should not be considered lacks merit.

As noted above, Plaintiff has come forward with sufficient evidence to show the existence of a genuine issue of material fact regarding whether Defendant Tervo violated his Eighth

-10-

Amendment rights by striking him on his testicles and denying him medical care. Defendants assert that Plaintiff's claim that McCarthy, Edlund, Alexander, Napel and Hofbauer were involved is based solely on the alleged statement by Defendant Tervo that they were "in agreement" with him. Plaintiff offers the affidavit of inmate Solomon-Bey, who attests that he saw Defendant Tervo strike Plaintiff on his testicles and overheard Defendant Tervo telling Plaintiff that he had been instructed to do that by Defendant McCarthy because of Plaintiff's litigation activities. Inmate Solomon-Bey further attests that Defendant Tervo told Plaintiff that Edlund, Alexander, Napel and Hofbauer were "in agreement" with his conduct. In the opinion of the undersigned, the record shows the existence of a genuine issue of material fact regarding whether Defendants Tervo, Alexander, Edlund, Hofbauer, McCarthy and Napel conspired to retaliate against Plaintiff for his litigation activities.

Plaintiff alleges that Defendant Raymond retaliated against him by refusing to process grievances, rejecting them, and / or denying his grievances. Plaintiff also claims that Defendant Raymond threatened to place Plaintiff on modified access to the grievance procedure. As noted by Defendants, "[t]he Sixth Circuit repeatedly has held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim." *Johnson v. Alexander*, 2013 WL 915085, slip op. *3 (W.D. Mich., Mar. 8, 2013) (*citing Jackson v. Madery,* 158 F. App'x 656, 660 (6th Cir.2005) (per curiam); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 446 (6th Cir.2005)). Moreover, because the failure to provide Plaintiff a grievance form would render the grievance process unavailable, Plaintiff's inability to file a grievance would not bar him from filing a § 1983 action. *Kennedy v. Tallio*, 20 F. App'x 469, 470-71 (6th Cir. Sept. 26, 2001). Therefore, it is clear that the denial of a grievance form does not constitute adverse action for purposes of a retaliation claim.

Plaintiff alleges that Defendant Pertu told him that Defendant Sherry's approval of the misconduct report written by Defendant Raymond was retaliatory. However, as noted by Defendants, Plaintiff's claims against Defendant Sherry are entirely conclusory. Defendant Sherry's only involvement in this case appears to be that she is the Regional Prison Administrator. (Defendants' Exhibit P, docket #80-17.) Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that

defendant had some duty or authority to act.  *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991).  In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability.  *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988).  Finally, supervisory liability claims cannot be based on simple negligence.  *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendant Sherry was personally involved in the activity which forms the basis of his claim.  Defendant Sherry's only role in this action was that she was the Regional Prison Administrator.  Defendant Sherry cannot be liable for such conduct under § 1983.  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000).  Accordingly, the undersigned recommends that Plaintiff's claims against Defendant Sherry be dismissed for lack of personal involvement.

Plaintiff claims that Defendant Yankovich retaliated against him when he found him guilty of a misconduct written by Defendant Raymond.  Defendants assert that the misconduct conviction at issue was a class II or minor misconduct, which does not result in the loss of good time or disciplinary credits.  Defendants state that such a conviction does not constitute an adverse action for purposes of a retaliation claim.  However:

> there is a question of fact as to whether the issuance of an allegedly nonlegitimate minor misconduct ticket resulting in a written reprimand could constitute an "adverse action." "[T]he question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law." *Bell*

> *v. Johnson,* 308 F.3d 594, 603 (6th Cir.2002) (citing *Thaddeus–X,* 175
> F.3d at 398). "Thus, unless the claimed retaliatory action is truly
> 'inconsequential,' the plaintiff's claim should go to the jury." *Id.*

*Campbell v. Gause,* 2011 WL 825016, 8 (E.D. Mich. 2011). Therefore, there is an issue of fact regarding whether the minor misconduct conviction constituted adverse conduct for purposes of a retaliation claim.

Nor does it appear that Defendant Yankovich is entitled to absolute judicial immunity. Defendant Yankovich attests that he was employed by the MDOC as a Corrections Shift Supervisor (Lieutenant) during the pertinent time period. (Defendants' Exhibit Q, ¶ 1, docket #80-18.) There is no evidence in the record that Defendant Yankovich is a hearing officer under Mich. Comp. Laws §§ 791.251 through 791.255, including, that he "is an attorney especially appointed to conduct prison disciplinary hearings as a full time judicial officer, wholly independent of the warden and other prison officials in the prison in which he conducts his hearings." *See Dyer v. Hardwick*, 2012 WL 3695671, 1 (E.D. Mich. 2012) (*citing Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988)).

Defendants also assert that Defendants Jondreau, Larson, Pertu and Petaja are entitled to summary judgment because they had no personal involvement in the misconduct ticket written by Defendant Raymond. In response to this assertion, Plaintiff offers the affidavit of inmate Fulton Boyd, who states that he overheard Defendant Pertu tell Plaintiff that he and Defendants Petaja, Larson and Jondreau all assisted in reprisals taken against Plaintiff at AMF in order to teach Plaintiff a lesson about filing complaints. (Plaintiff's Exhibit K, ¶ 2, docket #87-1.) As noted by Defendants, such a vague statement is insufficient to show that Defendants Jondreau, Larson, Pertu and Petaja were personally involved in the allegedly retaliatory misconduct ticket written by Defendant Raymond. Therefore, Plaintiff's retaliation claims against Defendants Jondreau, Larson, Pertu and Petaja on that basis are properly dismissed.

-14-

Defendants Maki and Neher assert that they are entitled to summary judgment on Plaintiff's retaliation and equal protection claims. As noted above, Plaintiff alleges that on July 22, 2010, Defendant Maki "continued a pattern of subjecting Plaintiff to racial harassment, racial slurs and retaliatory mistreatment." Plaintiff complained to Defendant Neher, who indicated that he agreed with Defendant Maki's opinion of non-whites and that Plaintiff especially deserved to be mistreated because of his complaints against Defendants. Plaintiff fails to allege any other specific facts with regard to Defendants Maki and Neher. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-69 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Therefore, Defendants Maki and Neher are entitled to summary judgment.

Defendants state that Defendants Snyder and Barry are entitled to summary judgment. Plaintiff claims that on June 9, 2010, the court approved a settlement in a prior case filed by Plaintiff, which provided that Plaintiff begin receiving Kosher meals, and that on July 14, 2010, Defendant Barry told Plaintiff that he was going to be receiving false misconduct reports from staff. On July 26, 2010, Defendant Barry wrote a false, retaliatory Notice of Intent on Plaintiff, stating that Plaintiff had been observed drinking Kosher soy milk in a non-Kosher area, and should not continue to receive a Kosher diet. Defendant Barry waited nearly one month before reviewing the Notice of Intent with Plaintiff. Defendant Snyder affirmed the Notice of Intent on August 24, 2010, and ruled that Plaintiff was not eligible to receive a Kosher diet. Plaintiff claims that Defendants Barry and Snyder falsified the Kosher diet violations in order to circumvent the settlement agreement regarding Plaintiff's Kosher diet.

Defendants offer a copy of the hearing report regarding the Notice of Intent to remove Plaintiff from his Kosher diet accommodation, which states that on July 26, 2010, Plaintiff "was

observed by Food Leader Leinonen entering the therapeutic diet room, opening the cooler, obtaining an already opened container of soy milk, pouring a glass, and consuming it." The report further states that Defendant Barry reported that Plaintiff had repeated this conduct again after the initial incident. In defense, Plaintiff stated that the kosher policy specified "food," not "drink." (Defendants Exhibit W, docket #80-24.) Defendant Snyder's reasons for findings indicated that milk is considered to be "food." Defendant Snyder indicated that the therapeutic diet room is not a kosherized area, thereby rendering the contents of opened containers non-kosher. Defendant Snyder concluded that the fact that the soy milk was opened and not stored in a kosher area renders it non-kosher, regardless of its labeling. Plaintiff was removed from kosher accommodation. (Defendants Exhibit W, docket #80-24.)

Defendants assert that because Plaintiff has never successfully overturned the hearing finding, his claim must fail. In response, Plaintiff contends that he was never actually started on a kosher diet prior to the misconduct, despite the fact that he was entitled to such a diet as part of a settlement in a prior case. Plaintiff states that he is asserting violations of his right to practice his religious beliefs and to be free from retaliation.

Where a disputed issue of fact is resolved at a Michigan major misconduct hearing as a necessary part of the hearing's judgment, that factfinding has preclusive effect in collateral litigation brought by the prisoner under 42 U.S.C. § 1983. *Peterson v. Johnson*, __ F.3d __, 2013 WL 1490082, *11 (6th Cir. 2013). Therefore, Plaintiff may not contest the finding that he drank from an open container of soy milk in an non-kosher area. However, such a finding is insufficient to show that Defendants did not act with retaliatory motive. As stated by the Sixth Circuit in *Colvin v. Caruso*, 605 F.3d 282 (6th Cir. 2010), the prison's policy of terminating a religious meal program based on a one-time possession of a non-Kosher item may be unreasonable under the First

Amendment and RLUIPA. *Id.* at 296-97. As noted in *Colvin*, the proper test for determining whether a prisoner is entitled to a religious diet is whether his religious beliefs are sincere. *Id.* at 298. Given the facts in this case, it is possible that Plaintiff was merely mistaken regarding whether he was allowed to drink the soy milk as part of his kosher diet. The undersigned concludes that there is an issue of fact regarding whether Defendants could reasonably remove Plaintiff from his kosher diet on this basis, as well as to whether their motivation for doing so was retaliatory. Therefore, Defendants Barry and Snyder are not entitled to summary judgment on Plaintiff's retaliation claims. Nor are Defendants Barry and Snyder entitled to summary judgment on Plaintiff's claims under the First Amendment and RLUIPA.

Defendants assert that Defendant Pelkola is entitled to summary judgment on Plaintiff's retaliatory misconduct claim because Plaintiff was found guilty of the misconduct. As noted above, Plaintiff claims that Defendant Pelkola wrote a misconduct ticket on him on October 9, 2009. Defendant Pelkola attests that he wrote a misconduct ticket on Plaintiff after he observed him eating sausage patties off of the serving line. (Defendants' Exhibit AA, ¶ 5, docket #80-28.) Defendants offer a copy of a report which shows that Plaintiff was found guilty of theft on October 23, 2009. (Defendants' Exhibit Z, docket #80-27.) As stated by Defendants, "[a] finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim." *Jackson v. Madery,* 158 F. App'x 656, 662 (6th Cir.2005). However, the record in this case does not include a copy of the hearing report. Therefore, the undersigned is unable to determine the basis for the finding of guilt. Consequently, Defendant Pelkola is not entitled to summary judgment on Plaintiff's retaliation claim.

Plaintiff alleges that Defendant Canlas denied him needed medical care in retaliation for Plaintiff's conduct in filing complaints. Plaintiff states that this violated his right to be free from

retaliation, as well as his rights under the Eighth Amendment. Specifically, Plaintiff alleges that on March 31, 2010, Defendant Canlas refused to provide medical care regarding Plaintiff's abnormal blood test, which Defendant Canlas admitted was indicative of an internal organ problem. Defendant Canlas told Plaintiff that if staff told him to deny or delay medical treatment because of Plaintiff's use of the grievance system, Defendant Canlas would oblige them. In addition, Defendant Canlas stated that if Plaintiff had wanted his medical problem to be properly addressed, he should have thought of that before he filed complaints on staff.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however, the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under

*Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

In response to Plaintiff's allegations, Defendant Canlas attests that he was one of two primary care medical providers at AMF in 2010. (Defendant Canlas's Exhibit A, ¶ 4, docket #95-2.) The record shows that Defendant Canlas saw Plaintiff for the first time on May 3, 2010. During this appointment, Defendant Canlas reviewed Plaintiff's chart and performed an examination. Defendant Canlas noted that Plaintiff's liver enzymes were elevated, but that Plaintiff did not complain of any symptoms which would indicate a liver disorder. Plaintiff denied alcohol abuse, denied jaundice or abdominal pain, and stated that he was on a voluntary weight loss program. Plaintiff appeared to be

alert and in no distress. Plaintiff's abdomen was normal upon physical examination. A review of medical literature indicated that liver enzymes may be elevated due to many benign conditions and, in the absence of symptoms, it is standard to monitor the levels with follow up labs. (Defendant Canlas's Exhibit A, ¶¶ 15-16, docket #95-2; Defendant Canlas's Exhibit B, p. 35 of 52, docket #97-1.)

Plaintiff's medical records show that his vital signs and blood pressure were checked on May 6 and 11, 2010. Medical staff were monitoring Plaintiff's blood pressure to see if the medication he was prescribed in April, which was called HCTZ, was working to improve his blood pressure. (Defendant Canlas's Exhibit B, pp. 35-37 of 52, docket #97-1.) On May 27, 2010, Defendant Canlas performed a chart review and noted that the HCTZ had resulted in good control of Plaintiff's blood pressure. (Defendant Canlas's Exhibit A, ¶ 16, docket #95-2; Defendant Canlas's Exhibit B, p. 41 of 52, docket #97-1.) Plaintiff was seen by nursing staff in July for a dietary question and in August for a fainting spell while exercising. (Defendant Canlas's Exhibit B, pp. 46-50 of 52, docket #97-1.)

On September 15, 2010, Defendant Canlas saw Plaintiff for high blood pressure and cholesterol levels. Defendant Canlas discussed Plaintiff's previous complaints of GERD (gastro-esophageal reflux disease), his cholesterol medication, and reactions to HCTZ, as well as eczema on his feet and scrotum. Plaintiff did not raise any concerns regarding his liver enzymes and Defendant Canlas's examination did not raise any additional concerns. (Defendant Canlas's Exhibit A, ¶ 20, docket #95-2; Defendant Canlas's Exhibit B, p. 52 of 52, docket #97-1.) In addition, Defendant Canlas ordered blood work. (Defendant Canlas's Exhibit B, p. 1 of 52, docket #97-2.) On September 20, 2010, Defendant Canlas noted that Plaintiff's EKG had been completed with no distress. (Defendant Canlas's Exhibit B, p. 6 of 52, docket #97-2.)

Plaintiff's vital signs were checked on September 23 and 30, October 4, 7 and 11, and he was seen by a nurse on October 14, 2010. (Defendant Canlas's Exhibit B, pp. 7-13 of 52, docket #97-2.) On October 15, 2010, Defendant Canlas reviewed Plaintiff's chart and noted that Plaintiff needed to be called out to discuss his EKG results. Defendant Canlas saw Plaintiff on October 20, 2010, and informed Plaintiff that his EKG results were normal. In addition, Defendant Canlas examined Plaintiff and noted nothing out of the ordinary. (Defendant Canlas's Exhibit B, pp. 14-15 of 52, docket #97-2.)

Plaintiff was placed on the list for a teeth cleaning and was seen for blood pressure checks in October and November. (Defendant Canlas's Exhibit B, pp. 16-25 of 52, docket #97-2.) On November 11, 2010, Plaintiff complained of stomach pain and a bloody bowel movement after he reportedly ate oatmeal with plastic in it. Plaintiff was seen by a nurse on November 15, and Defendant Canlas ordered an x-ray, which was negative for any abnormality and that no foreign object was detected. (Defendant Canlas's Exhibit A, ¶ 26, docket #95-2; Defendant Canlas's Exhibit B, pp. 26-31 of 52, docket #97-2.) On November 30, 2010, Plaintiff had a health assessment, during which the nurse noted that Plaintiff's abdomen was "non-tender." No complaints of abdominal pain were noted and Plaintiff denied having bloody or black stools. A liver function panel was ordered. (Defendant Canlas's Exhibit B, pp. 34-36 of 52, docket #97-2.)

On December 6, 2010, Defendant Canlas saw Plaintiff in chronic care clinic. Plaintiff complained of a "mild, dull epigastric pain radiating to the left flank." Plaintiff denied vomiting blood, bleeding from the rectum, or tarry stools. Defendant Canlas noted that an abdominal x-ray done on November 24, 2010, showed no foreign body. Defendant Canlas took Plaintiff's vital signs and performed an examination, which revealed that Plaintiff's abdomen was soft and not tender. Plaintiff showed no abnormality. Defendant Canlas ordered a urinalysis and blood stool check.

(Defendant Canlas's Exhibit A, ¶ 28, docket #95-2; Defendant Canlas's Exhibit B, pp. 42-43 of 52, docket #97-2.) On December 30, 2010, Defendant Canlas reviewed Plaintiff's chart and noted that Plaintiff's blood pressure was under control and that Plaintiff was experiencing no other issues. (Defendant Canlas's Exhibit A, ¶ 31, docket #95-2; Defendant Canlas's Exhibit B, p. 51 of 52, docket #97-2.)

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). In the opinion of the undersigned, Plaintiff received regular, adequate medical attention. Therefore, Plaintiff's Eighth Amendment claim lacks merit. Moreover, because Plaintiff was not denied medical care, he cannot show that Defendant Canlas retaliated against him. Accordingly, Defendant Canlas is entitled to summary judgment.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996);

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As previously discussed, because Plaintiff cannot establish that his constitutional rights were violated as to Defendants Isaacson, Sohlden, Majurin, Raymond, Sherry, Jondreau, Larson, Pertu, Petaja, Maki, Neher and Canlas, they are entitled to qualified immunity. However, Defendants Tervo, Alexander, Edlund, Hofbauer, McCarthy, Napel, Yankovich, Barry, Snyder and Pelkola are not entitled to qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant Canlas's motion for summary judgment. In addition, Defendants Isaacson, Sohlden, Majurin, Raymond, Sherry, Jondreau, Larson, Pertu, Petaja, Maki and Neher are entitled to summary judgment. Finally, the undersigned notes that Defendants Tervo, Alexander, Edlund, Hofbauer, McCarthy, Napel, Yankovich, Barry, Snyder and Pelkola are not entitled to summary judgment.

Accordingly, it is recommended that Defendant Canlas's Motion for Summary Judgment (Docket #95) be granted in its entirety, and that the Motion for Summary Judgment filed by Defendants Alexander, Barry, Edlund, Hofbauer, Isaacson, Jondreau, Larson, Maki, McCarthy, Napel, Neher, Pelkola, Pertu, Petaja, Raymond, Sherry, Snyder, Sohlden, Tervo and Yankovich (Docket #79) be granted in part. Should the court adopt the report and recommendation, the remaining claims will be Plaintiff's retaliation claims against Defendants Tervo, Alexander, Edlund, Hofbauer, McCarthy, Napel, Yankovich, Barry, Snyder and Pelkola, as well as Plaintiff's First Amendment and RLUIPA claims against Defendants Barry and Snyder.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of your receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: May 31, 2013